UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JORDAN RIVERO,

      *Plaintiff*,

  - *v.*-

MONROE COUNTY SHERIFF'S OFFICE, and RICK RAMSAY, DYLLON HANSEN, ANA COELLO, and VAUGHN O'KEEFE, officials at MONROE COUNTY SHERIFF'S OFFICE, each in their official and individual capacities,

      *Defendants.*

_____ - cv- _____

**COMPLAINT**

JURY TRIAL
DEMANDED

Plaintiff JORDAN RIVERO ("Plaintiff" or "Mr. Rivero"), by and through his undersigned counsel McLaughlin & Stern, PLLC, as and for a Complaint against Defendants MONROE COUNTY SHERIFF'S OFFICE, RICK RAMSAY, DYLLON HANSEN, ANA COELLO, and VAUGHN O'KEEFE, officials at MONROE COUNTY SHERIFF'S OFFICE, each in their official and individual capacities, (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. Plaintiff, Mr. Rivero, brings this action for damages and equitable relief based on the unlawful violation of his constitutional rights by the use of excessive force by Defendants, the Monroe County Sheriff's Office (the "Sheriff's Office"), Sherriff Rick Ramsay ("Sherriff Ramsay"), Dyllon Hansen ("Officer Hansen"), Ana Coello ("Officer

1

Coello"), and Vaughn O'Keefe ("Officer O'Keefe"), officials of the Monroe County Sheriff's Office, who, together, used excessive police force in violation of 42 U.S.C. § 1983.

2. Mr. Rivero was only 19 years old when the officials of the Monroe County Sheriff's Office, acting under color of state law, violated his constitutional rights by the unnecessary and unlawful use of excessive force to tase Mr. Rivero after he had clearly and visibly been the victim of a terrible car collision and suffered a traumatic head injury.

3. Mr. Rivero was not under arrest at the time unlawful force was used against him, nor was he a suspect of a crime. It was clear that morning in July 3, 2022, that Mr. Rivero was a back seat passenger in a terrible car collision.  After being extracted from the vehicle by the Monroe County Fire Department, Mr. Rivero was petrified, injured, and disoriented.  While trying to make sense of the horrific scene, and struggling to breathe through his broken nose, which was covered in blood, Mr. Rivero continued to cry out for help.  Apparently When Mr. Rivero did not adhere to the commands and aggressive handling of his person by Officer Hansen, Officer Coello, and Officer O'Keefe to sit on the ground, Officer Hansen proceeding to tase him for four cycles in the span of a minute after directing Mr. Rivero to "get on the fucking ground".  As a result, Mr. Rivero's head crashed into the pavement as he fell causing a traumatic head injury to an already fragile victim.  Mr. Rivero had a grand mal seizure in the ambulance shortly thereafter and was ultimately unresponsive, requiring his urgent delivery to Mariners Hospital where he had to then be transferred by helicopter to Kendall Regional Hospital due to his dire condition and the hospital's inability to adequately treat him.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1361.

5. Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1391.

6. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

## PARTIES

7. Plaintiff, Jordan Rivero, is a resident of Lantana, Florida, and at all times relevant to the allegations set forth in this complaint was a resident of Palm Beach County and a citizen of the United States.

8. Defendant, Officer Dyllon Hansen, at all relevant times was a police officer employed by the Monroe County Sherriff's Office to perform duties in the Town of Tavernier. At all relevant times, Officer Hansen was acting in such capacity as the agent, servant, and employee of Defendant Monroe County Sherriff's Office. Officer Hansen is being sued in his official and individual capacities.

9. Defendant, Officer Ana Coello, at all relevant times was a police officer employed by the Monroe County Sherriff's Office to perform duties in the Town of Tavernier. At all relevant times, Officer Coello was acting in such capacity as the agent, servant, and employee of Defendant Monroe County Sherriff's Office. Officer Coello is being sued in her official and individual capacities.

10. Defendant, Officer Vaughn O'Keefe, at all relevant times was a police officer employed by the Monroe County Sherriff's Office to perform duties in the Town

of Tavernier.  At all relevant times, Officer O'Keefe was acting in such capacity as the agent, servant, and employee of Defendant Monroe County Sherriff's Office.  Officer O'Keefe is being sued in his official and individual capacities.

11. As all times relevant hereto, Defendant Sherriff Rich Ramsay was the duly appointed Chief Law Enforcement Officer in Monroe County.  As such, he was the commanding office of Defendants Officer Hansen, Officer Coello, and Officer O'Keefe and was responsible for their training, supervision, and conduct.  Sherriff Ramsay was also responsible by law for enforcing the regulations of the Monroe County Sherriff's Office and for ensuring that Monroe County police personnel obey the laws of the State of Florida and of the United States.  Sherriff Ramsay was acting in such capacity as the agent, servant, and employee of Defendant Monroe County Sherriff's Office at all relevant times and is being sued in his official and individual capacities.

12. Defendant, the Monroe County Sherriff's Office, is a municipal corporation within the State of Florida and, at all relevant times, it employed Defendants Office Hansen, Officer Coello, and Officer O'Keefe.

13. At all times relevant hereto, and in all their actions described herein, Defendants Officer Hansen, Officer Coello, and Officer O'Keefe were acting under color of state law and pursuant to their authority as police personnel.

14. All of the officers and the Monroe County Sheriff's Office, as well as the Department of Financial Services, has been provided with proper notice of this action pursuant to Florida Statute § 768.28.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15. On July 3, 2022, Mr. Rivero was on a fishing trip with three of his friends, specifically, Daniel Klein ("Daniel"), Jerome Harmon ("Jerome"), and John Tyler Sanders ("Tyler"), in Monroe County. The fishing trip was intended to be in the early morning hours of July 3, 2022.

16. At or around 5:55 A.M. on July 3, 2022, Mr. Rivero was a passenger seated behind Daniel, the driver of the Toyota Tacoma, when the vehicle crossed over from the northbound lane into the southbound lane and crashed into a concrete pole on the right side of the vehicle. The vehicle then struck a wooden fence on the left side of the vehicle.

17. Prior to the accident, Mr. Rivero, who was a cadet in high school, was preparing to take the exam to become a firefighter in Palm Beach County, like his father.

18. Law enforcement was notified by a bystander and arrived on the scene at approximately 6:08 A.M. Upon their arrival, Mr. Rivero and Daniel were both clearly suffering from blunt force injury as result of the accident and trapped in the vehicle. The Sherriff's Office and Fire Rescue proceeded to extract Mr. Rivero and Daniel from the vehicle.

19. Upon Mr. Rivero's extraction from the vehicle, it was evident that he was disoriented and upset. The firefighters attempted to direct him towards the backboard laying on the street. As Mr. Rivero began to wander, Officers Hansen, Coello, and O'Keefe grabbed his arms and repeatedly told him to "stop" and "just relax, bro" before pulling him down to the ground and instructing him to "stay seated".

20. Throughout this time, Mr. Rivero was bleeding from an apparent head wound, as well as from trauma to and lacerations across his face. He continued to sob uncontrollably.

21. Disoriented and in shock from the crash still, Officers Hansen, Coello, and O'Keefe grew visibly frustrated that Mr. Rivero struggled to remain calm and seated on the shoulder of the road. Despite this Defendant Officers Hansen, Coello, and O'Keefe shouted at Mr. Rivero to "just relax". Mr. Rivero told Defendants that he could not breathe, to which they instructed him to breathe through his mouth. Mr. Rivero's nose was covered in blood, and he was obviously in a state of distress.

22. When Mr. Rivero stood, Defendant Officers Hansen, Coello, and O'Keefe aggressively grabbed at Mr. Rivero's arms, attempting to pull Mr. Rivero to the ground and his arms around his back. They did so with extreme and unnecessary force. By this time, Defendant Officers Hansen, Coello, and O'Keefe had not accessed the physical damage to Mr. Rivero's head nor face, nor other areas of his body, such that their use of force in attempting to restrain him was unreasonable under the circumstances.

23. Although Mr. Rivero apologized and agreed to their commands, Defendant Officers Hansen, Coello, and O'Keefe tightened their grip on Mr. Rivero and pushed him around before proceeding to state, "get on the fucking ground!" At this moment, Defendant Officer Hansen fired a taser gun at Mr. Rivero's stomach. Mr. Rivero was not warned by Defendant Officers Hansen, Coello, or O'Keefe that they would tase him.

24. At no point was Mr. Rivero suspected of a crime or in custody, he was an adolescent victim of a horrific car accident while on an early morning fishing trip. The

use of the taser was extreme, unnecessary, and unreasonable, given that Mr. Rivero appeared to be confined to the location of the shoulder of the road, blocked from traffic by fire engines, emergency services units, and police vehicles.

25. Defendant Officers Hansen, Coello, and O'Keefe proceeded to tase Mr. Rivero four more times within the span of one minute. During their first use of the taser on Mr. Rivero, the force was so extreme that it caused him to be knocked to the ground and with such force that his head slammed into the pavement, rebounded, and then smacked against the pavement again while his body lay thrashing from the voltage. When Mr. Rivero attempted to roll over, Defendant Officers held him in place, face down on the pavement, and forcefully restrained his arms while attempting to handcuff his hands and feet.

26. The Defendant Officers tased Mr. Rivero despite his having been an adolescent victim in a horrific vehicular accident, severely injured and in shock. At all relevant times, Defendant Officers Hansen, Coello, and O'Keefe treated Mr. Rivero not as a victim in need of medical assistance, but, rather, as a suspect in custody, in derogation of police protocol.

27. During their use of the taser against Mr. Rivero, Mr. Rivero screamed in pain and pled for help.  Defendant Officers continued to hold Mr. Rivero down against the pavement as Mr. Rivero's friend, Tyler, was questioned on whether Mr. Rivero had used narcotics. Again, despite his injuries, Defendants treated Mr. Rivero as a criminal and not as a victim of a tragic motor vehicle accident with obvious injuries to his head and in a state of shock.

28. Further, despite Mr. Rivero's friend's insistence that Mr. Rivero had not been under the influence of narcotics, but was, rather, in shock, the Defendant Officers argued and insisted that Mr. Rivero was, instead, "fucked up." In reality, at the time of the accident, Mr. Rivero was asleep in the back seat, then jolted from the impact of the accident.

29. After some time, Mr. Rivero's arms and feet were cuffed, and he was rolled over before being placed on a stretcher. The street was covered in blood from the impact of his forceful collision with the pavement while being tased.

30. Eventually, Mr. Rivero was moved to an ambulance. While in the ambulance, Mr. Rivero had a grand mal seizure and was decorticate (*i.e.*, presenting with an abnormal flexion of the arms with the extension of the legs, a sign of severe injury to the brain). Mr. Rivero was emergently transported to the Mariners Hospital in Tavernier, Florida.

31. Shortly after arriving at Mariners Hospital, the hospital stated Mr. Rivero had a traumatic brain injury and he needed had to be transferred, by helicopter, to Kendall Regional Hospital where he remained until he was discharged on July 8, 2022.

32. While receiving medical treatment, the hospital had to administer Ativan to treat Mr. Rivero's extreme shock and panic. As the medical records indicate, as a result of the incident, Mr. Rivero suffered from a severe concussion and post-concussion syndrome, a laceration to his ear and upper lip, a broken nose which requires continued treatment, a subarachnoid hemorrhage, acute anemia from blood loss, and acute hypoxic respiratory failure, which required mechanical ventilation.

33. As a result of Defendants' excessive force against Mr. Rivero, he still suffers from continued medical issues. Specifically, he cannot run or walk far distances without shortness of breath. Because of Mr. Rivero's shortness of breath, he is unable to complete the test to become a firefighter – which had been, prior to the incident complained of, his lifelong goal. Additionally, he continues to experience severe anxiety. Mr. Rivero did not suffer from any of these symptoms prior to the incident.

34. Defendant Officers Hansen, Coello, and O'Keefe ignored the signs of Mr. Rivero's physical trauma, shock, and panic, and were instead dismissive of Mr. Rivero's complaints, in complete disregard of their training to provide medical assistance to the victim of an accident, not excessive force.

35. Defendant Officers Hansen, Coello, and O'Keefe, acted in concert in using excessive force against Mr. Rivero, a victim of a motor vehicle accident, in the absence of any threat he may or could have possible posed, and in denying him timely treatment.

36. Defendant Officer Hansen repeatedly and excessively used his taser on Mr. Rivero even though he was not the subject of custody or arrest, did not have the ability to physically threaten the officers, and was not attempting to flee or escape.

37. Defendant Officers Hansen, Coello, and O'Keefe acted against protocol by failing to facilitate Mr. Rivero's removal by emergency services to a medical facility as soon as possible to respond immediately and timely to his severe injuries.

38. Defendant Officers' use of extreme, unwarranted and unreasonable force was patently unlawful.

39. Because of the aforesaid unlawful acts, Mr. Rivero suffered severe physical injuries and continues to suffer from those injuries physically and mentally.

## COUNT I – EXCESSIVE FORCE
**(42 U.S.C. § 1983)**

40. Plaintiff repeats and realleges each of the allegations set forth in paragraphs "1" through "37" as though more fully stated herein.

41. At all relevant times, Plaintiff was not accused or suspected of a crime, was not threatened with arrest or apprehension prior to, or after, the use of force, and posed no immediate threat of danger to the officers or others.

42. At all relevant times, Defendant Officers Hansen, Coello, and O'Keefe unreasonably used excessive force where a reasonable officer would have understood that tasing Plaintiff in the way Officer Hansen did was in violation of the Fourth Amendment to the United States Constitution. As the Court so found in *Oliver v. Fiorino*, 586 F.3d 989 (11th Cir. 2009).

43. The force used by Defendant Officers Hansen, Coello, and O'Keefe was not reasonable as there was no need for force, Mr. Rivero was the adolescent victim of a motor vehicle accident.

44. The force used by Defendant Officers Hansen, Coello, and O'Keefe was additionally not reasonable given the extent of injury Plaintiff had already suffered, made worse by the force used.

45. At all relevant times, the excessive force used was malicious and sadistic in that Defendant Officers Hansen, Coello, and O'Keefe comments on the body camera

footage make plain that the Defendant Officers thought Plaintiff was on drugs and thus had no issue sadistically applying excessive force as a result.

46. At all relevant times, Defendant Officers Hansen, Coello, and O'Keefe treated Plaintiff as a suspect and not a victim.

47. Defendant Officers Hansen, Coello, and O'Keefe were summoned in their official capacity and had a duty to utilize their training, education, and experience to assess Mr. Rivero's state of medical emergency and provide immediate medical assistance and they breached that duty.

48. Each of Defendants failed to intervene to restrain the others from violation of Plaintiff's constitutional rights, despite being able to do so.

49. Plaintiff was suffering from a severe medical crisis, and at all relevant times, Defendant Officers Hansen, Coello, and O'Keefe had a continuing duty to assess Plaintiff's medical condition and panic and to treat Plaintiff, instead of worsening his condition by tasing him.

50. These wrongful acts were the proximate cause of injuries suffered by Plaintiff.

51. Defendant Monroe County Sheriff's Officer and Sheriff Ramsay failed to adequately train, supervise, investigate, or discipline Monroe County Police officers for the use of excessive force and abuse, including by using a taser on a victim of a car accident where there was no substantial threat to any person.

52. Defendants misused and abused their power, acting under color of state law, to violate Plaintiff's constitutional rights. The violation of Plaintiff's rights which occurred under color of state law is actionable under 42 U.S.C. § 1983.

53. As a result of Defendants' unlawful conduct, Mr. Rivero has been damaged in an amount to be determined at trial, but not less than $75,000.00.

WHEREFORE, Plaintiff Mr. Rivero respectfully requests the following relief:

   a. On the Claim for Relief, as against Defendants Monroe County Sheriff's Office, Rick Ramsay, Dyllon Hansen, Ana Coello, and Vaugh O'Keefe, each in their official capacities, a declaratory judgment that Defendants have violated 42 U.S.C. § 1983;

   b. On the Claim for Relief, as against all Defendants, compensatory damages in an amount to be determined at trial but not less than Dollars $75,000.00

   c. On the Claim for Relief, as against Defendants Monroe County Sheriff's Office, Rick Ramsay, Dyllon Hansen, Ana Coello, and Vaugh O'Keefe, each in their individual capacities, punitive damages in an amount to be determined at trial but not less than Dollars $75,000.00; and

   d. Awarding Plaintiff such other, further or additional relief as the Court may deem just, proper and equitable, including reasonable attorneys' fees, interest, costs and disbursements.

## COUNT II- BATTERY

54. The plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 53.

55. At all times material, Officers Hansen, Ramsay, Coello and O'Keefe Intended to inflict a harmful contact with Mr. Rivero's body when they forced him to the ground and tased him repeatedly causing him to fall face first on concrete while already suffering a head injury as a result of a car accident.

56. Officers Hansen, Ramsay, Coello and O'Keefe continued to tase Mr. Rivera even after they determined he needed medical treatment and after he continued to tell them that he could not breathe.

57. The officers conduct was reckless and wanton, and constituted a reckless disregard for Mr. Rivero's life and safety.

58. As a direct result of the officers conduct and unpermitted conduct and touching, Mr. Rivero suffered permanent injury was injured in and about his body, had pain and suffering, disability, disfigurement, impairment of working ability, mental anguish, loss of enjoyment of life and Plaintiffs incurred medical expenses in the care and treatment of said injuries; all of said injuries are permanent within a reasonable degree of medical probability.

WHEREFORE, Plaintiff, JORDAN RIVERO, demands judgment for damages against the Defendants, MONROE COUNTY SHERIFF'S OFFICE, RICK RAMSAY, DYLLON HANSEN, ANA COELLO, and VAUGHN O'KEEFE, officials at MONROE COUNTY SHERIFF'S OFFICE, each in their official and individual capacities, and further demands trial by jury.

### COUNT III- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. The plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 58.

60. The acts of battery by Officers Hansen, Ramsay, Coello and O'Keefe were, intentional, deliberate, and reckless.

61. The acts of the officers in the treatment of an injured car accident victim and the use of force were outrageous and beyond all bounds of decency in a civilized society.

62. As a direct and proximate result of the foregoing, Plaintiff has suffered severe and ongoing emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, along with consequential damages as a result of the severe distress.

WHEREFORE, Plaintiff, JORDAN RIVERO, demands judgment for damages against the Defendants, MONROE COUNTY SHERIFF'S OFFICE, RICK RAMSAY, DYLLON HANSEN, ANA COELLO, and VAUGHN O'KEEFE, officials at MONROE COUNTY SHERIFF'S OFFICE, each in their official and individual capacities, and further demands trial by jury.

PRAYER FOR RELIEF WHEREFORE, Plaintiff Jordan Rivero respectfully requests:

a. Judgment for compensatory damages against all Defendants Hansen, Ramsay, O'Keefe and Coello under all Counts;

b. Costs of litigation:

d. Attorney fees;

e. Any and all other further relief as this Court may deem just and appropriate. DEMAND FOR JURY TRIAL Plaintiff hereby demands a trial by jury on all issues so triable.

## JURY DEMAND

Plaintiff hereby demands a jury trial for all claims asserted herein.

Dated:  November 6th, 2023

        McLAUGHLIN & STERN, PLLC

      By:  **//s *Dena Sisk Foman***
        Dena S. Foman
        FBN:  518417
        Steven J. Hyman*
        Jonathan R. Jeremias*
        Gabrielle N. Esposito*
        525 Okeechobee Blvd, Suite 1700
        West Palm Beach, FL  33401
        (561) 650 4020
        dfoman@mclaughlinstern.com
        shyman@mclaughlinstern.com
        jjeremias@mclaughlinstern.com
        gesposito@mclaughlinstern.com
        *Attorneys for Plaintiff*

        **Admissions Pro Hac Vice pending*