UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81462-ROSENBERG

JORDAN RIVERO,

     Plaintiff,

v.

MONROE COUNTY SHERIFF'S
OFFICE, et al.,

     Defendants.

_____/

**ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon the Defendants' Motion to Dismiss. DE 33. The

Motion is fully briefed. The Court has reviewed the Motion, the Response, DE 43, the Reply, DE

49, and the record and is otherwise fully advised in the premises. For the following reasons, the

Court **GRANTS** the Motion.

**I.    Case Background**

On the early morning of July 3, 2022, Plaintiff Jordan Rivero was a passenger in a single-

car crash. DE 31 at ¶¶ 2, 16. Various emergency personnel responded to the scene, including

Monroe County deputy sheriffs. *Id.* at ¶ 18. Plaintiff—extremely disoriented, bleeding from his

head, and crying—needed to be extracted from the vehicle. S0278 BWC 2:46–7:41.[1] The driver

needed to be extracted as well. *Id.* Emergency personnel kept instructing Plaintiff to move back

from the damaged rear door (where Plaintiff was sitting), so that they could have room to open the

door with tools, but Plaintiff did not listen and instead remained close to the rear door. *Id.* Because

---

[1] The video footage of this incident was filed conventionally with the Court. *See* DE 38. Where the video "is clear and obviously contradicts the plaintiff's alleged facts," the Court "accept[s] the video's depiction instead of the complaint's account." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023).

Plaintiff did not comply, a firefighter instead extracted Plaintiff through the rear window in lieu of the rear door. *Id.*

Once emergency personnel moved Plaintiff away from the vehicle, they gently but firmly instructed him to "sit," told him to "calm down," and reassured him that he was "in good hands" and "safe." S0007 BWC 2:45–3:50. Plaintiff would not easily sit down, so the emergency personnel pushed Plaintiff down as he continued to cry and fidget. *Id.* Plaintiff asked to stand up a few times; the emergency personnel who remained focused on him, the deputy sheriffs, denied his request and kept a hand on him. S0278 BWC 8:04–9:31. Within a minute, Plaintiff stood up and the deputies pulled him back down. *Id.* at 9:50–10:03.

When Plaintiff got up the second time, Defendant Deputy Dylon Hansen jumped in to help the other deputies wrestle Plaintiff down again. S0007 BWC at 5:34–5:45. Plaintiff appeared to acknowledge the deputies' commands to sit as he yelled "sorry" and sat, but he quickly popped up again. *Id.* at 5:46. Plaintiff succeeded in getting away this time and fell toward the vehicle where firefighters were still working. *Id.* at 5:46–5:52. Hansen unholstered his taser. *Id.* As the deputies tried to restrain Plaintiff, Plaintiff moved closer to the damaged vehicle and then away from the vehicle while still on the side of the road. *Id.* at 5:52–5:59. Hansen deployed his taser but missed, striking a fellow deputy instead. *Id.*

Plaintiff, seeing the taser, began back-peddling further away from the deputies and vehicle toward an unbarricaded part of the scene. *Id.* at 6:00–6:07. Yelling that Plaintiff should "get on the ground," Hansen fired again, this time connecting with Plaintiff and immediately incapacitating him and dropping him to the ground. *Id.* at 6:07–6:12. Once the taser shock ended, Plaintiff tried to quickly get up, and Hansen fired again. *Id.* at 6:12–6:18. The other deputies got on top of Plaintiff. *Id.* at 6:18–20. Hansen fired the taser two more times as Plaintiff moved. A

deputy then told Hansen, "we're good on that," and Hansen stopped using his taser. *Id.* at 6:36–6:42.

Plaintiff kept yelling and occasionally flailed his legs as deputies handcuffed him. *Id.* at 6:42–8:00.  Hansen retrieved a hobble restraint device and applied it to Plaintiff's legs. *Id.* at 8:55–9:14.  Throughout this entire course of events, Plaintiff was clearly not in his right state of mind, leading the deputies to reasonably question whether Plaintiff had previously taken a narcotic. *Id.* at 5:34–9:40.  Paramedics began to treat Plaintiff, move him to a stretcher, and place him in an ambulance. *Id.* at 9:35–18:26; S0278 at 22:40–25:03.  Because Plaintiff sat up, a paramedic requested that one of the deputies also ride in the ambulance. *Id.*  During this time, Plaintiff was calm and apologetic. *Id.* at 25:03–29:10.  He then slipped in an out of consciousness and seized. *Id.* at 31:45–36:20.  Plaintiff still suffers from medical issues that he attributes to this incident. DE 31 at ¶ 36.

On November 6, 2023, Plaintiff sued the Monroe County Sheriff's Office, Monroe County Sheriff Rick Ramsay in his official and individual capacities, and Monroe County Sheriff's Deputies Dylon Hansen, Ana Coello, and Vaughn O'Keefe in their official and individual capacities.  Against all the Defendants, Plaintiff alleges violations of his Fourth Amendment right to be free from excessive force and a failure to intervene in that excessive force, pursuant to 42 U.S.C. § 1983, as well as state law claims of battery and intentional infliction of emotional distress ("IIED").

## II.     The Parties' Arguments

The Defendants raise two types of arguments in support of dismissal.  First, the Defendants

argues that Plaintiff has sued the wrong Defendants in the Amended Complaint.[2] DE at 6–8. Second, the Defendants argue that Plaintiff's claims are insufficiently pled. *Id.* at 8–20.  Each argument is addressed in turn.

### III.    Plaintiff has Sued the Wrong Defendants.

#### a.  The Monroe County Sheriff's Office must be dismissed.

Plaintiff named the Monroe County Sheriff's Office as a Defendant.  The Defendants argue that a sheriff's office is not a proper defendant.  Plaintiff does not respond to this argument.

The Court looks to state law to determine whether a sheriff's office can be sued. *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992).  Under Florida law, a sheriff's office cannot be sued. Fla. Stat. § 768.28(9); *see Hill v. Escambia Cnty. Sheriff's Off.*, No. 21-10631, 2022 WL 1297809, at *2 (11th Cir. May 2, 2022).  Instead, Plaintiff may sue a constitutional officer in his or her official capacity—the Monroe County Sheriff—which Plaintiff has done in this suit. *See* Fla. Stat. § 768.28(9).  Because a sheriff's office cannot be sued, however, the Court **DISMISSES** Defendant Monroe County Sheriff's Office.

#### b.  Plaintiff's claims against various deputy sheriff Defendants in their official capacities are redundant with his claims against the Sheriff in his official capacity.

The Defendants argue that Plaintiff's decision to sue various deputy sheriff Defendants in their official capacities is redundant, given that Plaintiff also named the Monroe County Sheriff as a Defendant in his official capacity. DE 33 at 7.  Plaintiff does not respond to this argument.

Section 1983 suits against officers in their official capacities are "simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*,

---

[2] The Defendants also argue that the Amended Complaint is a shotgun pleading, however, because the Court dismisses the Amended Complaint in its entirety on other grounds, the Court does not address whether the Amended Complaint is a shotgun pleading.

931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (internal citation omitted).  In naming the deputy sheriffs as Defendants in their official capacities, Plaintiff has pled many redundant claims. *Id.*  That redundancy, according to the Eleventh Circuit, has the potential to confuse a jury. *Id.*  To avoid that potential confusion, the Court **DISMISSES** the redundant claims against the deputy sheriff Defendants in their official capacities.

### c.   The Sheriff cannot be sued in his individual capacity.

The Defendants argue that because Plaintiff does not allege that Sheriff Ramsay had personal involvement in this case, he cannot be sued in his individual capacity. DE 33 at 7–8.  To this, again, Plaintiff provides no response.

To state a claim against a government official in his or her individual capacity, a plaintiff must allege the official was "personally involved in acts or omissions that resulted in the constitutional deprivation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Relatedly, suits about policies or practices must also be brought against defendants in their official capacities. *Id.*  All of Plaintiff's allegations against Sheriff Ramsay concern Ramsay's role as a policymaker, and thus, Plaintiff fails to allege that Ramsay had any personal involvement in the incident.  Therefore, the Court **DISMISSES** all claims against Sheriff Ramsay in his individual capacity.

### IV.   Plaintiff's Claims Cannot Overcome Qualified and Sovereign Immunities.

The Defendants also argue that Plaintiff's claims are insufficiently pled.  The Court analyzes this argument count-by-count, guided by the U.S. Supreme Court's direction that a complaint's factual allegations must be accepted as true. *See Franklin v. Curry*, 738 F.3d 1246, 1250–51 (11th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff is entitled to all reasonable inferences from his Complaint; moreover, video footage at this stage must reviewed in the light most favorable to a plaintiff. *Robinson v. City of Huntsville*, No. 21-13979,

2022 WL 3867584, at *3 (11th Cir. Aug. 30, 2022).[3]  But conclusory recitations of elements of causes of actions cannot stand alone as recitations of elements "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

      **a. Count One, a Section 1983 excessive force claim, is not sufficiently pled to overcome the Defendants' qualified immunity.**

Count One of the Amended Complaint alleges the Defendants violated Plaintiff's Fourth Amendment right to be free from excessive force.  Specifically, this count is based on Deputy Hansen's decision to tase Plaintiff in violation of his office's policy limiting taser use to arrest or custodial situations; to tase Plaintiff in light of the circumstances; to deploy the taser in its most dangerous mode, "prong-mode"; and to use the hobble restraint device. DE 31 at ¶¶ 46–61.  Count One also is based on Deputies Coello and O'Keefe's use of the taser and the hobble restraint device. *Id.*  Lastly, the excessive force count is based on Sheriff Ramsay's failure to "train, supervise, investigate, or discipline" the deputies for use of excessive force with the deployment of a taser and a hobble restraint. *Id.* at ¶¶ 62–64.

The Defendants argue that qualified immunity protects them from the Section 1983 claims because Plaintiff's behavior during the incident justified the amount of force used. DE 33 at 8–13. The Defendants argue that Plaintiff's Amended Complaint fails to sufficiently plead factual allegations that would overcome qualified immunity because the video and, specifically, its depiction of the deputies' actions supersedes any of Plaintiff's factual allegations to the contrary in the Amended Complaint. *Id.*

---

[3] The parties agree that the video footage of the incident attached to the Defendants' motion to dismiss can be considered in analyzing the motion to dismiss without converting the motion to summary judgment. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276–77 (11th Cir. 2023) (noting that the doctrine of incorporation allows consideration of body camera footage attached to motions to dismiss that are referenced in the complaint, "central to the plaintiff's claim," and of undisputed authenticity without converting the motion to one for summary judgment).

The defense of qualified immunity "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The scope of inquiry is limited to whether a complaint establishes (1) "the defendant violated a constitutional right" and (2) "the violated right was 'clearly established.'" *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007)).  Though typically addressed at summary judgment, a court can consider the defense at the motion to dismiss stage, while granting plaintiffs the standard deference. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  There is no dispute that the deputy sheriffs encountered Plaintiff while performing discretionary functions, so the Court considers whether the deputies violated a constitutional right.

### i. Plaintiff has not plausibly alleged a constitutional violation against Deputy Hansen.

The Fourth Amendment "protects an individual from excessive force." *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1273 (11th Cir. 2021).  Courts consider an officer's use of force as excessive "if a reasonable officer would believe it is unnecessary in relation to the situation at hand." *Id.*  The objective reasonableness of an officer's force is assessed as the situation develops and not with hindsight, "judg[ing] from the perspective of a reasonable officer on the scene[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Though the question is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand," a court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Lee v. Ferraro*, 284 F.3d 1188, 1197

(11th Cir. 2002) (quoting *Graham*, 490 U.S. at 396 and *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001)).

Reasonableness is a fact-intensive analysis considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Furthermore, courts are empowered to consider "the need for application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer." *Helm*, 989 F.3d at 1273.

Plaintiff grounds his argument in the fact that his encounter with the deputy sheriffs was in the context of a non-criminal emergency situation. And Plaintiff argues Deputy Hansen's deployment of a taser and use of the hobble restraint constituted excessive force given Plaintiff's disorientation and the likelihood that he suffered from a severe medical injury in the accident. The Defendants counter that Plaintiff's resistance justified the taser deployment and the restraint.

Even in non-criminal emergency situations, the resistance and non-compliance of a person needing help can authorize the use of a taser. *See*, *e.g.*, *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1280 (11th Cir. 2023) (granting qualified immunity to an officer who fired his taser one time at a minor car accident perpetrator who resisted medical care and officer commands and tried to return to his vehicle a few times, creating a risk of danger to those in the surrounding area); *Ingram v. Kubik*, 30 F.4th 1241, 1251–52 (11th Cir. 2022), cert. dismissed, 142 S. Ct. 2855 (2022) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1157–58 (11th Cir. 2005)) (denying qualified immunity for an officer who body slammed a suicidal veteran who was disarmed and had his hands up because the veteran was compliant and "was not committing a crime, resisting arrest, or posing an immediate threat"); *Helm*, 989 F.3d at 1274–75 (denying qualified immunity for officers who

repeatedly tasered a teenage girl who "was not combative, posed no threat to others, and, to the extent she posed a risk to herself, that risk could have been managed by simply holding her head to prevent injury from her uncontrollable movements"); *Callwood v. Jones*, 727 F. App'x 552, 555–60 (11th Cir. 2018) (granting qualified immunity to officers who tasered a naked suspect who was running through oncoming traffic toward officers despite being told to stop and continued to violently resist arrest even after being handcuffed); *Oliver v. Fiorino*, 586 F.3d 898, 906 (11th Cir. 2009) (denying qualified immunity for officers who repeatedly tasered a man who waved officers down despite that plaintiff was "not suspected of a crime, posed no danger, did not act belligerently or yell at the officers, and did not disobey or resist the officers").

While the Court is sympathetic to Plaintiff's ordeal, it is undisputed from the video footage that Plaintiff was combative (including at least one strong shove against an officer's body) and posed a threat to himself and others[4] at the time he was tasered. S0007 BWC at 5:34–8:00. Video footage further shows that the officers tried multiple times to calm Plaintiff down so that he could receive medical care for his injuries, and that they moderately increased their applied force each time Plaintiff resisted and jumped up. *Id.* Only after the deputies' efforts to physically restrain Plaintiff failed, and Plaintiff broke away from the deputies, did Deputy Hansen unholster his taser. *Id.* At that time, Plaintiff's attempt to flee brought him closer to the firefighters who were still attending to the crashed vehicle. *Id.* As best as the Court can discern, the firefighters were continuing their efforts to remove the driver of the vehicle when Plaintiff broke free from law

---

[4] Whether Plaintiff posed a risk to others is a closer question than whether he was a risk to himself—he was clearly a risk to himself. Even viewing all reasonable inferences in Plaintiff's favor, however, the video shows Plaintiff was clearly agitated, not in his right mind, and that he was physically strong enough to resist containment by three trained deputies. The deputies can be overheard speculating that Plaintiff had used a narcotic, and the Court believes that suspicion had an adequate foundation in Plaintiff's behavior. For these reasons, the Court finds that a reasonable officer could have concluded that Plaintiff was a potential danger to others, were he allowed to roam freely.

enforcement's control.[5]  Though Plaintiff moved away from the crashed vehicle right before he was tasered, he had a clear opportunity to run past the barricade of emergency vehicles into the road or into the woods.  *Id.*  Due to Plaintiff's erratic behavior, a reasonable officer could have believed that the use of a taser was necessary to prevent a worse tragedy to Plaintiff, the other accident victims in need of medical treatment, the medical personnel attempting to render that treatment, or to the emergency personnel still attempting to attend to the crashed vehicle and the driver trapped inside.

A reasonable officer could also have concluded it was necessary to tase Plaintiff four times in rapid succession because, as revealed in the video, Plaintiff continued to resist (with significant physical strength) for several minutes after the initial tasing, even after heavy body weight had been applied to Plaintiff's back. *Id.* at 6:00–9:35.  The deputies continued to try to reassure Plaintiff and calm him down, even enlisting the aid of Plaintiff's friends, with no success.  *Id.*  Instead, Plaintiff continued to kick his legs and struggle which hampered medical personnel's ability to provide medical treatment to Plaintiff.  *Id.*  For these reasons, a reasonable officer in Deputy Hansen's position could decide to place Plaintiff's legs in a hobble restraint.  Only after Deputy Hansen tasered Plaintiff, placed him in handcuffs, and applied a hobble restraint were medical personnel able to administer treatment to Plaintiff. *Id.*

Because Plaintiff was noncompliant, combative, and resistant to officer commands, and because he jeopardized his own physical safety and potentially the safety of others, the Court concludes that Deputy Hansen did not violate Plaintiff's constitutional rights.  Instead, a reasonable officer could have concluded that the use of force against Plaintiff was necessary for Plaintiff's

---

[5] Both Plaintiff and the vehicle's driver were in the car at the time of Plaintiff's removal. S0278 BWC 3:08–4:49. Before Plaintiff is tasered, there is no sighting of the vehicle's driver being removed.

own protection for medical treatment to be provided.  Therefore, Deputy Hansen is entitled to qualified immunity, and the Court **DISMISSES** Count One as to Deputy Hansen.

### ii. Count One is insufficiently pled as to Deputies Coello and O'Keefe.

Plaintiff's claim for excessive force against Deputies Coello and O'Keefe is based on the use of the taser and hobble restraint.  But as the video shows, Deputy Hansen fired the taser and used the hobble restraint. S0007 BWC 5:52–6:42, 8:55–9:14.  Therefore, Plaintiff has failed to and cannot state a claim against Deputies Coello and O'Keefe for excessive force as they did not personally deploy the force.  The Court **DISMISSES** Count One as to Deputies Coello and O'Keefe.

### b. Because there was no underlying constitutional violation, any claims relying on that premise must also be dismissed.

Because no underlying constitutional violation exists as to Deputy Hansen, there can be no liability for failure to intervene or municipal liability. *E.g.*, *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1281–82 (11th Cir. 2023).  Therefore, Count One must be **DISMISSED** against Sheriff Ramsay and the failure to intervene count, Count Two, must be **DISMISSED** against all Defendants.

### c. Count Two, a battery claim,[6] is barred by sovereign immunity.

Deputy sheriffs are granted sovereign immunity against tort liability through Florida law. Florida Statute § 768.28, Florida's codified waiver of sovereign liability in certain situations, prohibits liability when an officer acts within the scope of their employment or function "unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28 (9)(a).  To decide

---

[6] For reasons that are unclear, the Plaintiff has brought a "Count II – Failure to Intervene" claim and a "Count II – Battery" claim.

whether sovereign immunity has been breached, a court must "analyze if each officer's actions created a fact question about whether he was entitled to immunity from each state law claim against him." *Coleman*, 41 F.4th at 11326.  Though sovereign immunity's exceptions are undefined in the statute, the Eleventh Circuit has recognized Florida's Fourth District Court of Appeal's definitions of the terms. *Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022) (citing *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. Dist. Ct. App. 2020)).

Florida law equates "bad faith" with the actual malice standard which, in this type of situation, applies when conduct is committed with "ill will, hatred, spite, [or] an evil intent." *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1325 (11th Cir. 2022) (quoting *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002)).  Because "malicious purpose" shares that definition of conduct committed with "ill will, hatred, spite, [or] an evil intent," Florida courts recognize that "malicious purpose" and "bad faith" are synonymous. *Peterson*, 290 So. 3d at 109; *Coleman*, 41 F.4th at 1325. By way of example, Florida courts have denied sovereign immunity when an officer enacted measures to better protect himself (rather than students) during a school shooting. *Peterson v. Pollack*, 290 So. 3d 102, 110–11 (Fla. Dist. Ct. App. 2020).

Here, the Court cannot conclude that the video supports an allegation of bad faith or malicious purpose as to any of the deputy sheriffs.  Similarly, the Court cannot conclude that the deputies acted with wanton and willful disregard of Plaintiff's safety.  To the contrary, the video shows the deputies trying to help Plaintiff by making medical treatment possible.  The Court wishes the outcome was different— that Plaintiff had not been harmed and that the deputies had succeeded in their initial efforts to simply restrain Plaintiff, rather than tase him.  But the Court cannot conclude that the deputies were malicious, given Plaintiff's physical strength to escape the deputies' efforts at physical confinement and the apparent need to protect Plaintiff from himself

so he could receive medical treatment.  Accordingly, Plaintiff has failed to persuade the Court that sovereign immunity does not shield the deputy sheriffs, and Count Two must be **DISMISSED** as to them.  Relatedly, because Plaintiff has not alleged an actionable constitutional violation by the deputies, there can be no claim against the Sheriff pertaining to policies and procedures—Count Two is **DISMISSED** as to the Sheriff.

> **d. Count Three, the IIED claim, was insufficiently pled and must be dismissed as to all the Defendants.**

The Defendants argue that the Amended Complaint inadequately pleads the presence of two elements of an IIED claim: outrageous conduct and severe emotional distress. DE 33 at 16–19.  The Defendants also argue that, even if the claim is sufficiently pled, sovereign immunity bars the IIED claim from proceeding against Sheriff Ramsay. *Id.* at 19.  In his Response, Plaintiff agrees to dismiss the claim. DE 43 at 29.  In light of Plaintiff's concession and in light of the Court's prior ruling on Florida's sovereign immunity, the Court **DISMISSES** the IIED claim.

**V.     Conclusion**

Plaintiff's Amended Complaint must be dismissed for several reasons.  Some of the Defendants are improperly included while some Defendants are named in their incorrect capacities.  Additionally, in light of the video footage the Amended Complaint fails to state a claim for a constitutional violation and both qualified and sovereign immunity shield Defendants from liability.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, DE 33, is **GRANTED** as more fully set forth in this Order.  The Court's dismissal is with leave to amend, provided any amendment conforms to the legal rulings in this Order and is filed by May 29, 2024.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 14th day of May, 2024.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE

14